UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 13-10137 |
| | ) | Chapter 7 |
| JAMES LEE NICKESON | ) | |
| SSN/ITIN xxx-xx-8970 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FORREST C. ALLRED, TRUSTEE | ) | Adv. No. 14-1004 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | |
| | ) | |
| CAMILLE NICKESON; | ) | DECISION RE:  CROSS-MOTIONS |
| LEE NICKESON; | ) | FOR PARTIAL SUMMARY JUDGMENT |
| JAMES L. NICKESON FARMS, INC.; | ) | |
| and LLJ, LLP | ) | |
| | ) | |
| Defendants. | ) | |

The matters before the Court are Trustee-Plaintiff Forrest C. Allred's Motion for

Partial Summary Judgment and Defendants Camille Nickeson and James L. Nickeson

Farms, Inc.'s Motion for Partial Summary Judgment.  These are core proceedings

under 28 U.S.C. § 157(b)(2).  The Court enters these findings and conclusions

pursuant to Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a).  For the reasons discussed

below, the Court will deny both motions.

I.

James L. Nickeson Farms, Inc. ("Farm Corporation")[1] was incorporated in 2002.

_____

[1]In his chapter 11 case, Debtor referred to "James L. Nickson [sic], Farms, Inc."
on schedule B and "Nickeson Farms, Inc." on schedule H.  Debtor's amendment to
schedule H in his chapter 11 case added "James L. Nickeson Farms" as a co-debtor,
but did not delete the references on his original schedule H to "Nickeson Farms, Inc."
In Debtor's chapter 7 case, he includes "James L. Nickeson Farms, Inc." on schedule

Its articles of incorporation authorized it to issue 15,000 shares with a par value of $100.00 per share "fully paid and nonassessable[.]"  James Lee Nickeson ("Debtor") was the lone incorporator and sole director.[2]

Debtor filed a chapter 11 petition in bankruptcy on December 3, 2009, Bankr. No. 09-10263 (D.S.D.).  According to his chapter 11 schedules, his assets were worth $646,300.00, while his liabilities totaled $5,146,441.69.  On his schedule of personal property, Debtor stated he owned 15,000 shares in Farm Corporation with an

---

B, "JLN Farms" on schedule D, "JLN Farms, Inc." on schedule H, and "Nickeson Farms," "James L. Nickeson Farms, Inc.," "JLN Farms, Inc.," and "JLN Farms" on his statement of financial affairs.  Corporate records for James L. Nickeson Farms, Inc. indicate Nickeson Farms, Inc. was a separate corporation that transferred substantial assets to James L. Nickeson Farms, Inc. on June 22, 2002 in exchange for 15,000 shares in James L. Nickeson Farms, Inc., and then Nickeson Farms, Inc. immediately transferred the 15,000 shares in James L. Nickeson Farms, Inc. to Debtor personally for unknown consideration.  In Debtor's present chapter 7 case, a few documents, including some cancelled checks, indicate Lee Nickeson, Debtor's son, may have used "Nickeson Farms" (no "Inc." included) as a business name.  For the present, the Court assumes the various abbreviated corporate references, excluding Nickeson Farms and Nickeson Farms, Inc., are abbreviations of James L. Nickeson Farms, Inc., which is referenced as "Farm Corporation" herein.  The parties may and should clarify the record at trial regarding what is "Nickeson Farms," whether Nickeson Farms, Inc. is still active, and if so, who holds the equitable interests in it.

[2]In light of the included cover memo from Farm Corporation's local counsel, the exhibit at docket entry 105-3 appears to be the complete corporate book for Farm Corporation, though the firm's Bates stamp numbering is puzzling.  The corporate book does not indicate an annual meeting was actually held annually.  A handwritten note on a second and third copy in the exhibit of the regular board of directors meeting minutes dated December 22, 2006 (Bates stamps Delaney 00324 and Delaney 00332) indicates multiple years' minutes may have been created or intended to have been created simultaneously, out of time.  Minutes in this exhibit of annual meetings of the shareholder dated December 22, 2006 and July 25, 2009 indicate Debtor and Camille Nickeson were both elected directors, though Farm Corporation's Articles of Incorporation have always provided for one director and the corporation's by-laws provided for one director until January 7, 2011.  *See also infra* note 4.

unknown value.

Debtor's original disclosure statement in his chapter 11 case did not reference his wife Camille Nickeson, except as to an attached February 7, 2007 balance sheet for Farm Corporation she had signed.[3] The original disclosure statement also did not reference Central Livestock Association Inc. or Genex Cooperative, Inc. (collectively "Genex") as specifically holding a secured or an unsecured claim to be paid through the plan. Two objections to Debtor's original disclosure statement were filed, including one by Genex, which identified itself as holding 80% or more of the unsecured claims in the chapter 11 case. After a hearing, Debtor was ordered to set forth the resolution of the objections in an amended disclosure statement, which the parties in interest were given an opportunity to review before Debtor filed it. Debtor eventually filed the amended disclosure statement, and the Court approved it on December 22, 2010.

In the amended disclosure statement, where claims were described, Debtor added a reference to Genex:

> Class 14 is the partially secured/unsecured claim of Central Livestock Association/Genex Cooperative, Inc. in the amount of $1,717,742.46, plus accrued interest through the date of the commencement of the case. This claim is to be paid pursuant to the Stipulation of the parties as shown in Exhibit H. It is estimated that these creditors are receiving a distribution roughly equal to a present value of $.20 on the dollar.

---

[3]The pre-printed form is labeled "Agricultural Balance Sheet" and the inserted name of the "Borrower" is Farm Corporation. In the disclosure statement, Debtor refers to it as a financial statement for him and his wife and further states: "Numerous assets on the balance sheet belong to the Debtor's spouse and are not property of the Estate."

In another section of the amended disclosure statement entitled "Means for Execution of the Plan," Debtor added:

> The Debtor's spouse intends to sell $100,000 worth of Gold investments she owns.  These funds will be paid to James Nickeson Farms.  Nickeson Farms will then pay the $220,000 to Genex.  James Nickeson Farms will issue stock to Debtor's spouse which will reduce the value of Debtor's stock.

To the amended disclosure statement, Debtor attached the same February 7, 2007 balance sheet for Farm Corporation, which indicated Farm Corporation had a net worth of $5,484,012.00.  The balance sheet also stated Farm Corporation owned $65,000.00 worth of gold, $6,500.00 worth of silver, and $120,000.00 worth of art prints and guns.  Another attachment to the amended disclosure statement was Debtor's liquidation analysis.  As had the one attached to Debtor's original disclosure statement, this liquidation analysis did not assign a value to Debtor's interest in Farm Corporation.  Rather, therein Debtor enigmatically stated, "[The value of Farm Corporation] is being utilized to generate income to pay unsecured creditors.  A liquidation of Nickeson Farm would result in negative income taxes."

Debtor also attached to the amended disclosure statement a new document entitled "Stipulation for Plan Treatment of the Pre-petition Secured and Unsecured Claims of [Genex]."  In it, Debtor and Genex acknowledged Genex had a judgment against Debtor, R&J Dairy, and Richard Millner for $1,717,742.46 and agreed Genex would be paid a total of $550,000.00 on that debt, with $220,000.00 to be paid by January 15, 2011 and the balance to be paid in annual installments $30,000.00 for several years.  The stipulation further provided:

-4-

c. Debtor (and the Debtor's spouse to the extent she asserts any interest in such property) shall grant Genex a security interest/mortgage on all real estate, farming equipment, farm products, claims, accounts receivable, inventory, general intangibles, business tort claims and all other business assets owned by Debtor or in which the Debtor has any interest, including but not limited to any real property or personal property that the Debtor has transferred or attempted to transfer to the Debtor's son or to other family members, which property or personal property, if not currently 100% owned by the Debtor, shall either be returned and transferred to the Debtor, or the Debtor will make arrangements satisfactory to Genex, for conveying security interests/mortgages in such property to Genex.

d. As a condition of this agreement, the Debtor shall cause Nickeson Farms, Inc. ("Nickeson Farms") to execute a guaranty of the Genex Claim, and shall cause Nickeson Farms to secure such guaranty of the Genex Claim by granting a security interest/mortgage in all of its assets to Genex. Genex agrees to release its lien on farm equipment to the extent reasonably requested by Nickeson Farms, to enable Nickeson Farms to trade such equipment on new equipment in the ordinary course of business.

The stipulation also included certain subordination provisions regarding Genex's new security interests.

Debtor circulated for confirmation the amended disclosure statement and a modified plan. In the modified plan, Debtor stated:

The Debtor will work for James Nickeson Farms, Inc. and James Nickeson Farms, Inc. will guarantee the secured debts if this Plan is confirmed. Farms will transfer sufficient funds to make the payments required under the Plan for Secured Creditors. For the Unsecured Class (Class 15), Farms will guarantee that the Class 15 claimants will be paid the amount they would receive under a Chapter 7, less tax claims and other liquidations costs.

Attached to the modified plan was the above-described stipulation between Debtor and Genex. In the modified plan itself, the Court did not find any other reference to Camille Nickeson. Also, the modified plan referenced Farm Corporation as the

-5-

guarantor secured and unsecured claims, while Debtor's stipulation with Genex referenced Nickeson Farms, Inc. as the guarantor for Genex's claim.

According to the January 7, 2011 minutes from a special meeting of Farm Corporation's board of directors, directors Debtor and Camille Nickeson approved an amendment to the corporation's articles of incorporation.[4]  Under the amendment, Farm Corporation would have authority to issue 75,000 shares, rather than just 15,000.  Again, each share was to have a par value of $100.00 "fully paid and nonassignable[.]"  According to the same January 7, 2011 board meeting minutes, the Farm Corporation's by-laws were amended to increase the number of directors from one to two.  The board minutes further provided, "Camille Nickeson stated that she had contributed cash to the corporation in the sum of $133,000.00 in return for the issues of 60,000 shares of the capital stock of the Corporation."  The board's attendant formal resolution provided Farm Corporation could issue the 60,000 shares to Camille Nickeson upon receipt of the stated consideration.  Shareholder minutes of the same date, signed by both Debtor and Camille Nickeson, accepted the board's

---

[4]Farm Corporation's original articles of incorporation provided for one director. When Farm Corporation's board of directors held the special meeting on January 7, 2011 to consider whether to amend the articles of incorporation to increase the number of available shares and also whether to amend the by-laws to increase the number of directors from one to two, the minutes erroneously identified both Debtor and Camille Nickeson as directors who were voting that day, though the board had only one authorized director position at the time.  The board also did not concomitantly amend the "one director" provision in its articles of incorporation.  A similar error was made regarding the minutes of Farm Corporation's shareholders on January 7, 2011. The minutes recognized Camille Nickeson as a voting shareholder, but Debtor was then the lone existing shareholder who first needed to vote to increase the available shares by 60,000, which would then be issued to Camille Nickeson.

change to the articles of incorporation and the change to the by-laws. Debtor continued as Farm Corporation's president and treasurer; Camille Nickeson served as its secretary.

With this planned transfer, Camille Nickeson would own 80% of the available shares in Farm Corporation. Debtor's interest would drop from 100% to 20%.

In an August 22, 2013 state court deposition, Camille Nickeson initially indicated she did not know why Farm Corporation's available shares were increased from 15,000 to 75,000. In the same deposition, she later stated it was done because "[Debtor] needed to pay Central Genex money that was a, I don't know if it was a lawsuit or what it was, and the corporation couldn't pay it, [Debtor] didn't have the money, so I said I would, but I would have to have extra shares, I would have to be a bigger share in the corporation in order to do that." She further acknowledged the Genex debt was personal to Debtor, not the corporation.

In a July 29, 2013 state court deposition, Debtor testified the source of the $133,000.00 Camille Nickeson used to purchase the 60,000 shares was an inheritance from her father. In her August 22, 2013 state court deposition, however, Camille Nickeson said about $81,000.00 of the funds came from the inheritance, savings, and a loan from Debtor's and her son Lee Nickeson, and the balance came from gold. Camille Nickeson stated in her deposition she received the gold from Debtor, who had been collecting gold coins for years. Camille Nickeson further stated Farm Corporation eventually carried the gold on its books as an asset, Debtor then gave the gold to her, and she subsequently used the gold to purchase the 60,000

shares from Farm Corporation.  Camille Nickeson said she did not pay for the gold. In her amended answer in the instant adversary proceeding, Camille Nickeson provided a different scenario:  She said she obtained the funds to purchase the 60,000 shares via two "loans" from Lee Nickeson totaling $79,375.00 "and the remainder of the funds came from inheritances . . . received from her father."[5]  Camille Nickeson and Lee Nickeson did not produce any documentation for the claimed loans from Lee Nickeson to Camille Nickeson.

Bank records provide another picture.  On January 11, 2011, Camille Nickeson deposited $117,472.00 in her bank account, which resulted in a balance of $135,179.72.  Three checks comprised the deposit:  a check from an insurance company for $38,097.00 dated January 4, 2011 payable to Farm Corporation and Debtor and two checks from Nickeson Farms and Lee Nickeson to Camille Nickeson totaling $79,375.00; one dated January 7, 2011 and another dated January 11, 2011.[6]  Camille Nickeson then wrote a check to Farm Corporation for $133,000.00 on January 12, 2011, and it was deposited into the Farm Corporation's account on that day.  Thus, about 29% of the $133,000.00 Camille Nickeson transferred to Farm Corporation was already Farm Corporation's funds, and Lee Nickeson and Nickeson Farms, not Camille Nickeson, supplied just over 59% of the $133,000.00.  The source

─────────────────────────

[5]If $79,375.00 of the $133,000.00 came from loans from Lee Nickeson, that left $53,625.00 to come from Camille Nickeson's inheritance.  However, in her August 22, 2013 deposition, Camille Nickeson testified the inheritance from her father was only $12,000.00.

[6]"Nickeson Farms" (no "Inc." included) and "Lee J. Nickeson" were printed on the checks as the drawers or account holders.  *See supra* note 1.

of the initial $17,707.72 in Camille Nickeson's account, prior to the January 2011 deposits, and the source of the $79,375.00 transferred from Lee Nickeson and Nickeson Farms to Camille Nickeson are unknown.

Of the transactions discussed by Camille Nickeson in her August 22, 2013 state court deposition, her amended answer in this adversary proceeding, and her bank account records, none match Debtor's chapter 11 amended disclosure statement, where Debtor said Camille Nickeson would use $100,000.00 of gold she owned to acquire shares in Farm Corporation.

Only the Internal Revenue Service objected to Debtor's modified plan, and only one unsecured creditor balloted against it. After a hearing, the Court confirmed the modified plan and directed Debtor to file a Plan as Confirmed to incorporate the resolution of the Internal Revenue Service's objection. The confirmation order and the Plan as Confirmed were entered February 7, 2011.

On February 16, 2011, Farm Corporation filed the amendment to its articles of incorporation with the South Dakota Secretary of State. This amendment reflected the January 7, 2011 board decision to increase the available shares from 15,000 to 75,000. According to a balance sheet provided to Great Plains Bank, Farm Corporation had a net worth of $851,209.00 on March 24, 2011.

On August 26, 2011, Debtor gave a security interest in various assets to Genex, as had been discussed in his plan. The security agreement's clause setting forth the collateral did not specifically reference Debtor's shares in Farm Corporation. Instead, it provided:

-9-

> [Debtor] hereby grants to [Genex], to secure the payment and performance in full of all of the Obligations, a security interest in the following properties, assets and rights of [Debtor], wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"):  all farming equipment and machinery, Farm Products, claims, accounts receivable, inventory, general intangibles, business tort claims, and all other business and agricultural assets owned by [Debtor] or in which [Debtor] has an interest, including [Debtor]'s art collection and gun collection.  Without limitation of the foregoing, the Collateral shall include the claims described on <u>Exhibit 4.5</u>.[7]

In contrast, the U.C.C. Financing Statement filed by Genex on September 22, 2011 did specifically reference Farm Corporation stock as part of the collateral Debtor pledged to Genex.

When Debtor signed this security agreement with Genex, Farm Corporation's "STOCK TRANSFER LEDGER" recognized Debtor as the sole shareholder.  Though the special board meeting minutes dated January 7, 2011 provided Farm Corporation was authorized to issue 60,000 shares to Camille Nickeson "upon receipt by [Farm] Corporation of the consideration set forth [in the stock subscriptions]," as of August 26, 2011, Farm Corporation had not recorded Camille Nickeson as a shareholder or  issued a stock certificate to anyone.[8]

---

[7]Defendants Camille Nickeson and Farm Corporation did not provide Exhibit 4.5 as part of the documents in support of their motion for partial summary judgment.

[8]A particular by-law required Farm Corporation's stock certificates to be consecutively numbered.  The certificate for the 2,250 shares Debtor retained after he transferred 12,750 shares to Camille Nickeson has number "1" on it, and Camille Nickeson's certificate for her total 72,750 shares has number "2" on it.  Thus, it appears Farm Corporation never issued a certificate to either Nickeson Farms, Inc. or Debtor for the original 15,000 shares, though the stock transfer ledger reflected their ownership.

As part of Debtor's agreement with Genex, Camille Nickeson signed a document entitled "Consent and Grant to Security Agreement," also dated August 26, 2011. The document said Debtor transferred his gold and silver collection to Camille Nickeson, she sold it for cash, and then she "used the cash to pay, at least in part," Debtor's $220,000.00 commitment to Genex. Therein, Camille Nickeson said she received in return 80% of the "outstanding stock" in Farm Corporation. This statement, like the others discussed above, did not jibe with the transfers in and out of Camille Nickeson's bank account, but was an acknowledgment by Camille Nickeson that her personal funds were not the exclusive source for her obtaining an 80% interest in Farm Corporation.

On October 28, 2011, Debtor transferred 12,750 of his original 15,000 shares of Farm Corporation to Camille Nickeson for $28,305.00. Though at her August 22, 2013 state court deposition Camille Nickeson could not recall details regarding this transfer, account records indicate Camille Nickeson paid for these shares by two checks, one for $23,305.00 dated October 28, 2011 and cashed December 13, 2011 and a second for $5,000.00 dated November 9, 2011 and cashed November 14, 2011. The notation on the November check says "advance on stock." According to Farm Corporation, the value Camille Nickeson paid for the shares was based on its February 23, 2010 balance sheet, though it acknowledges it owns real property valued at $926,410.00 (doc. 83).[9] The transfer of the 12,750 shares from Debtor to Camille

---

[9]In a letter dated July 8, 2010 (doc. 95-8), counsel for Debtor in his chapter 11 case identified several issues regarding the accuracy or completeness of some of Debtor's chapter 11 documents and a 2010 balance sheet for either Debtor or Farm

Nickeson was not a specific provision of either Debtor's chapter 11 modified plan or the attached stipulation with Genex. With this transfer, Camille Nickeson acquired 97% of Farm Corporation's shares, while Debtor retained only a 3% interest, reflecting another significant decrease from his original 100% ownership.

Camille Nickeson had $780.70 in her checking account on October 25, 2011, just before she purchased the 12,750 shares from Debtor. One large deposit was made before she wrote the checks for these shares: A check for $36,368.11 from Riverview, LLP payable to "Jim L[.] Nickeson Farms, Inc[.]" dated October 24, 2011 was deposited into Camille Nickeson's account on October 27, 2011. Additional deposits were made into Camille Nickeson's account before both her checks for the 12,750 shares cleared. A check for $10,890.00 dated November 16, 2011 from Larry Watkins payable to Debtor was deposited in Camille Nickeson's account on November 18, 2011, with Camille Nickeson receiving $890.00 in cash back. A check for $4,800.00 dated November 27, 2011 from Roger and Wanda Larson payable to Debtor was deposited in Camille Nickeson's account on December 2, 2011. Thus, the record shows Camille Nickeson did not have an interest in any of the three deposits, and Debtor was already entitled to $15,690.00 of the $28,305.00 Camille Nickeson "paid" for the 12,750 shares from Debtor. Moreover, though the Court did not uncover an explanation in the present record, Camille Nickeson did not write checks to Debtor for his 12,750 shares; she made both checks payable to Farm Corporation.

---

Corporation. Counsel for Debtor offered various explanations for the issues, but in essence, the letter highlighted Debtor and his family's lack of regard for corporate formalities and the shifting landscape of who owned what when.

Debtor assigned the 12,750 shares to Camille Nickeson by document dated October 28, 2011. Farm Corporation issued stock certificates on October 28, 2011, one to Debtor for 2,250 shares and another to Camille Nickeson for 72,750 shares.[10] The record does not indicate Farm Corporation ever issued a stock certificate to Camille Nickeson in January 2011, when corporate minutes indicate she was authorized to receive the first 60,000 shares upon paying for them. Thus, only as of October 28, 2011 did Farm Corporation's records and issued stock certificates acknowledge Camille Nickeson's ownership of shares in Farm Corporation.

Farm Corporation provided another balance sheet to Great Plains Bank dated March 12, 2012. The balance sheet indicated Farm Corporation had a net worth of $1,129,304.00.

On June 12, 2012, sixteen months after confirmation of a plan, Debtor moved for dismissal of his chapter 11 case, saying, "[Farm Corporation]'s operating creditor will not release funds to make payments to the Debtor's priority and unsecured creditors[,]" and he was thus unable to pay claims. In the motion, Debtor also stated he was unable to pay the Internal Revenue Service or unsecured creditors because of insufficient income. No party in interest opposed Debtor's motion, and the Court dismissed the chapter 11 case on July 9, 2012.

On August 27, 2013, Debtor filed a chapter 7 petition in bankruptcy. Forrest C. Allred, the case trustee, commenced this adversary proceeding against Camille

---

[10]These were the first two certificates Farm Corporation issued, according to its records (doc. 105-3). *See supra* note 8.

Nickeson, Lee Nickeson, Farm Corporation, and LLJ, LLP, another formal business entity in which Debtor or his family held the ownership interests. Trustee Allred's complaint contains eleven counts, the first four of which are at issue herein. Under count I, Trustee Allred wants the Court to avoid Debtor's transfer of the 97% interest in Farm Corporation to Camille Nickeson under 11 U.S.C. § 548(a)(1)(A) because the transfer was made by Debtor with an actual intent to hinder, delay, or defraud creditors. Under count II, Trustee Allred wants the Court to avoid Debtor's transfer of the 97% interest in Farm Corporation to Camille Nickeson under 11 U.S.C. § 548(a)(1)(B) because the transfer was made without adequate consideration, *i.e.*, was constructively fraudulent. Under count III, Trustee Allred wants the Court to avoid Debtor's transfer of the 97% interest in Farm Corporation to Camille Nickeson under 11 U.S.C. § 544(b) and S.D.C.L. § 54-8A-4(a)(1) because the transfer was made by Debtor with an actual intent to hinder, delay, or defraud creditors. And under count IV, Trustee Allred wants the Court to avoid Debtor's transfer of the 97% interest in Farm Corporation to Camille Nickeson under 11 U.S.C. § 544(b) and S.D.C.L. § 54-8A-4(a)(2) because the transfer was made without adequate consideration, *i.e.*, was constructively fraudulent. All the defendants answered.[11] The parties have engaged in discovery, though whether it is complete is unknown.

Trustee Allred has moved for partial summary judgment (doc. 71), asking the Court to grant judgment against Defendants Camille Nickeson and Farm Corporation,

---

[11]Trustee Allred withdrew his applications for default judgment after three defendants filed late answers.

cancel or avoid Debtor's transfer of shares in Farm Corporation to Camille Nickeson, and recover those shares for the estate. Defendants Camille Nickeson and Farm Corporation responded to Trustee Allred's motion (doc. 95) and also filed their own motion for partial summary judgment (doc. 87). After receipt of briefs and other supporting documents, both motions were taken under advisement.

II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a). An issue of material fact is *genuine* if the evidence is such that a trier of fact could find for either party. *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011). A genuine issue of fact is *material* if its resolution affects the outcome of the case. *Gazal v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 647 F.3d 833, 838 (8th Cir. 2011) (cite therein). In reviewing a motion for summary judgment, the Court considers the pleadings, the discovery and disclosure materials in the record, and any affidavits. *Wood v. SatCom Marketing, LLC*, 705 F.3d 823, 828 (8th Cir. 2013). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, ___ U.S. ___, 134 S.Ct. 1861, 1866 (2014). The nonmovant receives the benefit of all reasonable inferences supported by the evidence. *B.M. ex rel. Miller v. South Callaway R-II School Dist*., 732 F.3d 882, 886 (8th Cir. 2013).

The movant bears the burden of identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 852-53 (8th Cir. 2012). If the movant meets its burden, the nonmovant, to defeat the motion, must establish a genuine factual issue. *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013). The nonmovant may not rest on mere allegations or pleading denials, *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010), or "merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoted in *Residential Funding*, 725 F.3d at 915). Instead, the nonmovant, as to those elements of a claim on which it bears the burden of proof, must substantiate its allegations with admissible, probative evidence that would permit a finding in its favor on more than speculation or conjecture. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoted in *Spaulding v. Conopco, Inc.,* 740 F.3d 1187, 1190-91 (8th Cir. 2014)); *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

III.

The elements Trustee Allred must prove, by a preponderance of the evidence, under count I to establish Camille Nickeson's obtaining a 97% equity interest in Farm Corporation was actually fraudulent under 11 U.S.C. § 548(a)(1)(A) are: (1) Debtor transferred an interest of his property; (2) within two years before Debtor's August 27, 2013 petition date; and (3) Debtor made the transfer with an actual intent to hinder, delay, or defraud present or future creditors. *Kaler v. McLaren* (*In re McLaren*),

-16-

236 B.R. 882, 888-89 (Bankr. D.N.D. 1999).

Because fraud can rarely be established by direct evidence, fraudulent intent may be inferred from the circumstances surrounding the transfer. *Ahlgren v. Dailey* (*In re Schnoor*), 510 B.R. 868, 872 (Bankr. D. Minn. 2014) (citing *Brown v. Third National Bank* (*In re Sherman*), 67 F.3d 1348, 1353 (8th Cir. 1995)).  To determine whether circumstantial evidence establishes a fraudulent intent, courts consider whether any "badges of fraud" are present.  *Sherman,* 67 F.3d at 1353; *Allred v. Parmley* (*In re Parmley*), Bankr. No. 13-50109, Adv. No. 13-5005, 2013 WL 6577294, at *2-3 (Bankr. D.S.D. Dec. 16, 2013).

> Once a trustee establishes a confluence of several badges of fraud, the trustee is entitled to a presumption of fraudulent intent.  *See* [*Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 34 F.3d 800, 806 (9th Cir. 1994)]; *In re Bateman*, 646 F.2d 1220, 1223 (8th Cir. 1981).  In such cases, "the burden shifts to the transferee to prove some 'legitimate supervening purpose' for the transfers at issue."  *Acequia*, 34 F.3d at 806.

*Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998).  The elements under count III, wherein Trustee Allred relies on  11 U.S.C. § 544(b) and S.D.C.L. § 54-8A-4(a)(1), are the same as in count I, except the reach-back period under state law is four years.  S.D.C.L. § 54-8A-9(a).  State law recognizes similar badges of fraud.  S.D.C.L. § 54-8A-4(b); *Nielsen v. Logs Unlimited, Inc.*, 839 N.W.2d 378, 381-82 (S.D. 2013).

The elements Trustee Allred must prove, by a preponderance of the evidence, under count II to establish Camille Nickeson's obtaining a 97% equity interest in Farm Corporation was constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) are:  (1) an interest of Debtor in property; (2) was voluntarily or involuntarily transferred; (3) within

two years of August 27, 2013; (4) Debtor received less than reasonably equivalent value; and (5) Debtor was insolvent at the time of the transfer or became insolvent as a result thereof. *Sullivan v. Welsh* (*In re Lumbar*), 457 B.R. 748, 753 (B.A.P. 8th Cir. 2011). The elements Trustee Allred must prove under count IV, wherein he relies on 11 U.S.C. § 544(b) and S.D.C.L. § 54-8A-4(a)(2), are the same as in count II, except the reach-back period under state law is four years. S.D.C.L. § 54-8A-9(b).

While Trustee Allred believes the present record entitles him to judgment as a matter of law on the first four counts, Defendants Camille Nickeson and Farm Corporation have challenged his ability to prevail on several of the required elements. Their various legal and factual contentions are discussed below.

*Sufficiency of the complaint*.   Defendants Camille Nickeson and Farm Corporation contend Trustee Allred's claims in counts I through IV regarding fraud do not pass muster under Fed.R.Civ.P. 9(b) because they were not pled with particularity. Their argument is without merit.

Foremost, the rule does not apply to the allegations of constructive fraud encompassed in counts II and IV. *Larson Mfg. Co. of South Dakota, Inc. v. Connecticut Greenstar, Inc.*, 929 F. Supp. 2d 924, 934-35 (D.S.D. 2013); *In re Petters Co.*, 495 B.R. 887, 916-17 (Bankr. D. Minn. 2013). Second, Trustee Allred's allegations regarding actual fraud in counts I and III satisfy the who, what, where, when, and how requirement of Rule 9(b):  His allegations regarding Debtor's transformation of Debtor's sole shareholder interest in Farm Corporation to a minority shareholder interest, the insider status of stock recipient Camille Nickeson, the

-18-

problematic source of the funds Camille Nickeson transferred in exchange for the stock, and Debtor's personal use of the funds received by Farm Corporation for the stock all sufficiently evidence falsity in the transfers, especially in light of the nature of the case and the relationship between the defendants.  *United States v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917 (8th Cir. 2014) (cites therein); *Larson Mfg. Co.*, 929 F. Supp. 2d at 936-37; *Petters Co.*, 495 B.R. at 895 and 917.  In sum, Trustee Allred's complaint presented no obstacles to these defendants' ability to answer.  *Larson Mfg. Co.*, 929 F. Supp. 2d at 937.

*Timeliness of counts I and II*.  Under § 548(a)(1)(A) or (B), reflected in Trustee Allred's counts I and II, the subject transfer had to be made within two years before Debtor's August 27, 2013 petition date.  Defendants Camille Nickeson and Farm Corporation argue the 60,000 shares were transferred to Camille Nickeson on January 7, 2011, outside that two-year period.

The Court is satisfied the transfer of the 60,000 shares discussed in both counts I and II fell within the required two-year reach-back period.  On January 7, 2011, Farm Corporation's board authorized Farm Corporation to issue the 60,000 shares to Camille Nickeson when she paid the consideration for them.  Farm Corporation, however, did not acknowledge actual receipt of payment until October 28, 2011, when it recorded the transfer in its books and issued Camille

Nickeson a stock certificate,[12] thus completing the transfer.[13] *E.g., Golden v. Oahe Enterprises, Inc.*, 240 N.W.2d 102, 108-09 (S.D. 1976) (as between corporation and its shareholders, directors, and third parties in privity, once corporate stock is paid for and the transfer is recognized in the corporate books, the shares are issued even if a certificate has not been executed and delivered).  The October 2011 completion date, as reflected by Farm Corporation's records, is well within the two-year reach-back period of § 548(a)(1).

*Encumbrance of Debtor's shares*.  Citing S.D.C.L. § 54-8A-1(2)(i) and (12) regarding the definition of an "asset " and a "transfer," Defendants Camille Nickeson and Farm Corporation want counts III and IV dismissed because Debtor's security agreement with Genex dated August 26, 2011 fully encumbered his shares in Farm Corporation, thus precluding the 12,750 shares Debtor transferred to Camille Nickeson from being an asset that may be the subject of a fraudulent–actual or constructive–transfer.  In response, Trustee Allred contends the security agreement did not cover Debtor's Farm Corporation stock because it failed to identify the stock as part of the collateral.

For two reasons, the Court will not dismiss counts III and IV, as requested by Defendants in their motion for partial summary judgment.  Foremost, Genex's security

---

[12]*See supra* note 8.

[13]Even by October 2011, it does not appear Camille Nickeson *herself* paid the required compensation entitling her to shareholder status and a certificate, since she passed along funds that in large part belonged to others.

agreement[14] did not include Debtor's shares of Farm Corporation, which are a "security," categorized as "investment property," S.D.C.L. §§ 57A-8-102(15), 57A-8-103(a), and 57A-9-102(49), as part of its collateral.[15]  The security agreement did not identify the stock by name, and Genex's reference to Debtor's "general intangibles," which specifically excludes "investment property" or "business assets," was insufficient to identify the Farm Corporation stock as part of the collateral.  S.D.C.L. § 57A-9-108(b).  Debtor's confirmed chapter 11 plan and the incorporated stipulation with Genex did not augment the security agreement because they did not actually "create or provide" for the security interest; they only set forth what the parties would do in the future.  S.D.C.L. § 57A-9-102(a)(74).  And the plan and stipulation also did not identify specifically or by category Debtor's Farm Corporation stock as collateral for Genex.  Further, Genex's form UCC-1 financing statement did not create or provide for the security interest and it was not signed by Debtor.  *Id.*; *Helms v. Certified Packaging Corp.*, 551 F.3d 675, 680 (7th Cir. 2008) (security agreement creates the

---

[14]In a reply (doc. 107), Defendants Camille Nickeson and Farm Corporation allude to a "pledge agreement" dated August 26, 2011 they want the Court to consider in place of the security agreement referenced by both parties.  They asked for leave to file the pledge agreement as an attachment to an affidavit, but did not explain why they had not, earlier in the proceeding, referenced this document and included it in the record.  With similar mystery, Defendants appended to their offered copy of the security agreement (doc. 87-4) an extra page that said, "SCHEDULES AND EXHIBITS TO THIS DOCUMENT ARE INTENTIONALLY OMITTED FOR PURPOSES OF THIS MOTION FOR PARTIAL SUMMARY JUDGMENT[.]"

[15]An interest in a partnership or limited liability company is a "general intangible," as long as it is not publicly traded or held in a securities account.  S.D.C.L. §§ 57A-8-103(c) and 57A-9-102(a)(42); *see Davis v. Brown* (*In re Brown*), 479 B.R. 112, 116-17 (Bankr. D. Kan. 2012).

security interest while the financing statement gives notice of that security interest); *In re Eyerman*, 517 B.R. 800, 807 (Bankr. S.D. Ohio 2014) (standardized financing statement, unsupported by other documentation, does not constitute a security agreement); *Eide v. Wollesen* (*In re Litwiller*), 357 B.R. 523, 533 (Bankr. N.D. Iowa 2006) (form UCC-1 did not create a security interest).   Consequently, the present record does not demonstrate Genex ever had a security interest that attached to Debtor's Farm Corporation shares, either before or after Farm Corporation created a stock certificate for Debtor.   *See inter alia* S.D.C.L. §§ 57A-8-106, 57A-9-106, and 57A-9-203(a) and (b).[16]

Second, even if Genex's security interest did attach to Debtor's Farm Corporation shares, the present record does not demonstrate the shares were fully encumbered.   *Nielsen v. Logs Unlimited, Inc.*, 839 N.W.2d 378, 384 (S.D. 2013). Without knowing the amount of Genex's claim at the time of the subject transfer and the value of all the collateral pledged–which seemingly included property belonging to others, not just Debtor–the extent to which Genex was undersecured or oversecured and the extent to which Debtor's Farm Corporation shares may have been encumbered is unknown.

*Transfer of Debtor's interest in property.*  An element common to all four counts at issue is that the subject transfer must have been a transfer of an interest Debtor held in property.  Defendants Camille Nickeson and Farm Corporation dispute Trustee

---

[16]Because Genex is not a party herein, any final determination in this adversary proceeding regarding whether Genex's security interest attached to Debtor's Farm Corporation stock will be limited to this adversary proceeding.

Allred can meet that element as to the 60,000 shares Camille Nickeson acquired, arguing the 60,000 increase in the available shares in Farm Corporation and their issuance to Camille Nickeson did not constitute a transfer by Debtor, but was instead a transfer by Farm Corporation.  The Court concludes otherwise.

First, the definition of a transfer is broad, covering both direct and indirect modes of parting with an asset or an interest in an asset.  11 U.S.C. § 101(54)(D); S.D.C.L. § 54-8A-1(12); S. Rep. No. 95-989, at 27 (1978), *reprinted in* U.S.S.C.A.N. 1978, 5787, 5811 (quoted in *Kaler v. Remily* (*In re Remily*), 314 B.R. 790, 797 (Bankr. D.N.D. 2004)).

Second, Debtor was the sole director of Farm Corporation when he voted to increase the available shares from 15,000 to 75,000 and, by this unilateral action, he diluted his interest in Farm Corporation from 100% to 20%.  Farm Corporation's available capital or net worth, however, was not correspondingly increased by the $133,000.00 Camille Nickeson gave Farm Corporation for her 60,000 shares. Instead, Farm Corporation served only as a conduit for Debtor to transfer the $133,000.00 to Genex.  Moreover, as discussed above, Camille Nickeson actually owned only a small percentage, if any, of the $133,000.00 she transferred to Farm Corporation for the 60,000 shares.  While the present record does not clarify *why* Debtor mapped out this circuitous route to pay his debt to Genex, it is quite clear at least one intended result was the transformation of his sole ownership of Farm Corporation into a majority interest for his wife and a minority interest for himself. *Reilly v. Antonello*, 852 N.W.2d 694 (Minn. App. 2014); *see Nielsen v. Logs*

-23-

*Unlimited, Inc.*, 839 N.W.2d 378 (S.D. 2013).

That Debtor's machinations were reflected, by some measure, in Debtor's confirmed chapter 11 plan and his stipulation with Genex[17] does not alter the nature of the transfer, especially where the terms of Debtor's stipulation with Genex were never litigated during the confirmation process and where the record regarding the actual transfer does not mirror the transfer proposed in the modified plan and stipulation.  In sum, to say the 60,000 increase in available shares was only a transfer by Farm Corporation to Camille Nickeson would reward Debtor and Camille Nickeson for their pervasive disregard for corporate formalities and fail to recognize the transfer simply altered the record title of one of Debtor's principal assets:  his stock in Farm Corporation.

*Debtor's insolvency*.   An element common to counts II and IV regarding constructive fraud is whether Debtor was insolvent at the time of the two Farm Corporation related transfers or became insolvent as a result of them.  Defendants Camille Nickeson and Farm Corporation argue Trustee Allred did not plead sufficient facts establishing Debtor's insolvency or expected insolvency.

As discussed above, Trustee Allred's complaint regarding Debtor's insolvency or expected insolvency after Debtor's transfer of his 12,750 shares was sufficient.

---

[17]The Court is being generous in saying Debtor's chapter 11 plan referenced this transfer.  Debtor's amended disclosure statement referenced "James Nickeson Farms" and "Nickeson Farms."  Debtor and Genex's stipulation, which was attached to both the amended disclosure statement and Debtor's modified plan, referred to "Nickeson Farms, Inc.," which may, at best, be considered Farm Corporation's predecessor. *See supra* note 1.  The status of Nickeson Farms, Inc. in early December 2010, when the stipulation with Genex was executed, is unknown.

Moreover, the present record amply demonstrates Debtor's insolvency. He filed a chapter 11 bankruptcy in late 2009. He did not get a plan confirmed until early 2011. His chapter 11 case was dismissed on July 9, 2012, only seventeen months after confirmation, on Debtor's own motion because his plan proved unsuccessful. Debtor's assets were vastly outweighed by his liabilities, as set forth in his schedules for both bankruptcy cases. Most important, there is nothing in the record that indicates his personal balance sheet ever improved during his chapter 11 case or between his two bankruptcy cases. Finally, one of Debtor's significant assets–whether its value is measured in dollars or by its ability to generate income–was his solely held corporation, Farm Corporation, in which he had placed substantial real and personal property. His actions in giving his wife Camille Nickeson the majority ownership of Farm Corporation while retaining only a fraction for himself for little or no consideration–however the Farm Corporation stock may ultimately be valued–clearly rendered Debtor insolvent, if he was not insolvent already.

*Valuation of the shares in Farm Corporation.* Defendants Camille Nickeson and Farm Corporation argue the constructive fraud counts fail because Trustee Allred relied on the stated par value of Debtor's Farm Corporation stock, declaring it "delivers an absurd result," and because Trustee Allred failed to set forth undisputed facts establishing the stock's "reasonably equivalent value." Defendants argue the stock's value was, instead, whatever Farm Corporation's directors said it was, citing S.D.C.L. § 47-1A-621.

Though Trustee Allred referenced the stock's par value in his complaint, counts

II and IV remain actionable.  As discussed above, his complaint adequately put Defendants on notice of the transfers at issue and the attendant problems with the consideration, or lack thereof, Camille Nickeson gave for the shares.  Though the stock's actual value may not be its stated par value, in South Dakota a stock's stated par value still carries some measure of meaning, as evidenced by S.D. Const. art. XVII, § 8 and S.D.C.L. §§ 47-1A-202.1(2)(d) and 47-15-4(6), and Trustee Allred could use that measure to initially assess the subject transfers, especially where Farm Corporation was closely held and where Farm Corporation had contemporaneously defined a par value for its stock.  Moreover, in his complaint, Trustee Allred did not solely rely on the par value in assessing whether Camille Nickeson gave reasonably equivalent value for her shares.  Instead, he noted the "unknown" value Debtor placed on the stock in his schedules, the extensive assets Farm Corporation held, including approximately 828 acres of real property, and Farm Corporation's February 12, 2013 balance sheet showing a net worth of just over $1.7 million.  However, through their motion for partial summary judgment, their response to Trustee Allred's motion, and attendant affidavits and exhibits, Defendants Camille Nickeson and Farm Corporation have established there is a material factual dispute regarding the stock's actual value when the transfers were made, something Farm Corporation's 2013 balance sheet may not fully reflect.  Accordingly, summary judgment for Trustee Allred on counts II and IV for constructive fraud will be denied.

IV.

The present record, while insufficient to grant summary judgment in Trustee

Allred's favor, greatly narrows the issues for trial.

For counts I and III regarding actual fraud, Trustee Allred has satisfied all the elements with the present record. As discussed above, the record shows the two transfers were of an interest Debtor held in property and both transfers were within the applicable reach-back periods. As to Debtor's fraudulent intent, several badges of fraud are readily apparent in the existing record, thus creating a rebuttable presumption of fraud. *Armstrong*, 141 F.3d at 802; *Parmley*, 2013 WL 6577294, at *2-3. The transfers of Debtor's shares in Farm Corporation were to an insider, Debtor retained actual control of Farm Corporation, Debtor faced financial difficulties at the time of the transfers, his interest in Farm Corporation constituted a major asset, and Camille Nickeson used little, if any, personal funds to pay for the shares she received. Accordingly, Defendants Camille Nickeson and Farm Corporation must go forward at trial and establish some legitimate supervening purpose for the transfers. *Armstrong*, 141 F.3d at 802; *Parmley*, 2013 WL 6577294, at *2; see Stoebner v. Ritchie Capital Management, L.L.C.* (*In re Polaroid Corp.*), 472 B.R. 22, 34-36 (Bankr. D. Minn. 2012).[18]

As to counts II and IV regarding constructive fraud, the present record, as discussed above, shows the two transfers were of an interest Debtor held in property and both transfers were within the applicable reach-back periods. The present record, also as discussed above, provides sufficient evidence Debtor was insolvent when the

---

[18]Under counts III and IV, which incorporate state law, the burden is not recognized as shifting. *See Prairie Lakes Health Care Sys. v. Wookey*, 583 N.W.2d 405, 411-12 (S.D. 1998).

transfers were made, and Defendants Camille Nickeson and Farm Corporation have not identified any admissible evidence that shows Debtor was solvent at the relevant times.

The focus at trial as to Trustee Allred's constructive fraud counts will need to be whether the consideration Camille Nickeson gave for her 72,750 shares was "reasonably equivalent" to the shares' actual value at the time of the transfers. Because Farm Corporation is closely held, a variety of factors may come into play when valuing the stock. *See Kaler v. Charles* (*In re Charles*), Bankr. No. 10-31028, Adv. No. 11-7008, 2012 WL 486524, at *9 (Bankr. D.N.D. Feb. 14, 2012). Moreover, since some of the funds Camille Nickeson transferred were not actually hers–her bank account served as a mere conduit for funds owned by others–what consideration she personally gave for the shares may need to be clarified at trial. Trustee Allred bears the burden of proof on the "less than reasonably equivalent value" issue, though upon a *prima facie* showing, the burden of persuasion may shift to Defendants to show otherwise. *See, e.g., Polaroid Corp.*, 472 B.R. at 57 and 57 n.49 (discussing indirect benefit to debtor through third party); *see also Prairie Lakes Health Care Sys. v. Wookey*, 583 N.W.2d 405, 414 n.7 (S.D. 1998).

An order will be entered denying both motions. A separate order will be entered setting a final pre-trial conference, during which the Court will set a trial date on the counts of Trustee Allred's complaint involving Defendants Camille Nickeson and Farm Corporation.

Dated: November 25, 2014.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

-28-

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota